IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:23CR114 |
| | : | |
| Plaintiff, | : | JUDGE ANA C. REYES |
| | : | |
| vs. | : | |
| | : | |
| KYLE MLYNAREK, et al., | : | **MEMORANDUM IN SUPPORT** |
| | : | **OF SENTENCING** |
| Defendant. | : | |

Kyle Mlynarek, through counsel, submits the following memorandum in support of his sentencing. For the following reasons involving his personal background, as well as his objections to the Presentence Report ("PSR"), Mr. Mlynarek requests that he be sentenced to a term of probation.

**I.     Objections to the PSR**

    **a.  The PSR Guideline Calculations.**

The United States Probation Office ("USPO") provided a calculation of Mr. Mlynarek's Advisory Sentencing Guideline Range in the PSR. The USPO began by selecting USSG § 2A2.4: Obstructing or Impeding Officers as the base guideline. PSR ¶ 31. This results in a base offense level of 10. *Id.* Three levels were then added because the offense allegedly involved physical contact. PSR ¶ 32. Finally, two levels were subtracted because Mr. Mlynarek has accepted responsibility for his actions. PSR ¶ 38. This results in a total offense level of 11. PSR ¶ 39. The USPO found Mr. Mlynarek's Criminal History Category ("CHC") to be I. PSR ¶ 42. An offense level of 11 and a CHC of I results in an 8-14 month guideline range. PSR ¶ 96. This is reduced to

8-12 months because Mr. Mlynarek was convicted of offenses that have a maximum sentence of 1 year. *Id.*

Mr. Mlynarek does not object to the calculation of his CHC. He does object to the calculation of his offense level. This is because the guideline chosen by the USPO as his base offense is incorrect. He should be sentenced under USSG § 2B2.3: Trespass. That guideline is more appropriate to the offenses of which Mr. Mlynarek was convicted. Mr. Mlynarek also objects to some of the factual allegations in the PSR. Finally, he objects to the use of the physical contact enhancement, should the Court elect to use USSG § 2A2.4 as the base offense level.

### b. USSG § 2B2.3 is the correct guideline for Mr. Mlynarek's convictions.

USSG § 2B2.3 is the most appropriate guideline because it is reflective of the counts of conviction in the indictment, which is the test that the law requires. As a starting point, the Court must look to the Statutory Index (Appendix A) to determine the correct guideline level. USSG § 1B1.2. The Statutory Index lists two possible guidelines for Mr. Mlynarek's 18 U.S.C. 1752(a) convictions: § 2A2.4 and § 2B2.3. USSG, Appendix A. The Court, therefore, must decide which of the two guidelines is more appropriate.

> When the offense of conviction appears to fall under the express terms of more than one guideline, the sentencing court must choose the guideline that is most applicable by comparing the guideline texts with the charged misconduct, rather than the statute (which may outlaw a variety of conduct implicating several guidelines) or the actual conduct (which may include factors not elements of the indicted offense.)

*United States v. Boulware*, 604 F.3d 832, 836 (4th Cir. 2010) (citing *United States v. Lambert*, 994 F.2d 1088, 1091 (4th Cir. 1993)) (internal quotation marks omitted). In other words, relevant conduct and the actual facts of the offense are not the benchmark for the initial determination of the base guideline, but rather the indictment plays that role.

Mr. Mlynarek pled guilty to counts two and three in the indictment, which charge him with violations of 18 U.S.C. 1752(a)(1) and 1752(a)(2), respectively. Count two states that Mr. Mlynarek knowingly entered and remained in a restricted building or grounds without lawful authority to do so. (R. 22: Indictment, pg. 2). Count three states that he engaged in disorderly and disruptive conduct at a restricted area, which impeded the orderly conduct of Government business. *Id.* Although 1752(a)(2) is closer to the USPO's choice of 2A2.4 as a guideline, it must ultimately fail for the following reasons.

USSG § 2A2.4 is titled Obstructing or Impeding Officers, which is indicative of the conduct that the guideline is meant to cover. Every indication from the guideline is that it is intended to be used for an offense where a specific police officer was victimized by obstructive behavior. The first offense characteristic asks if the offense involved physical contact or a dangerous weapon. USSG § 2A2.4(b)(1). The second asks if *the victim* sustained bodily injury. 2A2.4(b)(2) (emphasis added). USSG § 2A2.4(b)(2). The final characteristic asks if the conduct constituted aggravated assault. USSG § 2A2.4(b)(3).

The commentary of USSG § 2A2.4 also indicates that this guideline is intended to cover crimes involving a specific victim who was harmed. It notes that "the base offense level incorporates the fact that *the victim* was a governmental officer performing official duties." USSG § 2A2.4, comment. n. 2 (emphasis added). The problem is that counts two and three do not state that Mr. Mlynarek obstructed an officer or other specific victim. It is true that count three states that he impeded and disrupted the orderly conduct of Government business, but that is not the same as obstructing a specific person who was victimized by Mr. Mlynarek's conduct. It seems likely that the reason that the Statutory Index lists USSG § 2A2.4 as a possible guideline for this offense is that 18 U.S.C. 1752(a)(4) applies to anyone who has "knowingly engage[d] in any act of physical

3

violence against any person or property in any restricted building or grounds." That is much more appropriate for the § 2A2.4 guideline's references to a specific victim. Mr. Mlynarek is not charged with a violation of 18 USC 1752(a)(4), however, but (a)(1) and (a)(2).

The § 2B2.3 guideline is a better fit for this offense. It has a special offense characteristic of trespassing on a restricted building or grounds. § 2B2.3(b)(1). The guideline's commentary notes that "restricted building or grounds has the meaning give that term in 18 U.S. § 1752." § 2B2.3, comment, n. 1. If § 2A2.4 was likely intended to apply to offenses like § 1752(a)(4), then it seems that trespass would apply to those subsections of the statute that do not involve an official victim. Looking only at the indictment and not the evidence at trial or any relevant conduct, § 2B2.3 is a better fit for these offenses. For those reasons, we ask that the Court apply § 2B2.3 to Mr. Mlynarek's guideline calculation as to both counts two and three.

    c. **Mr. Mlynarek objects to certain facts contained in the PSR.**

Mr. Mlynarek objects to the following description of his actions outlined in the PSR's offense characteristics section. He raises an objection to the entirety of paragraph 17, except the phrase "Mlynarek and Balhorn entered the U.S. Capitol Building through the Senate Wing's door at approximately 2:22 pm." The remainder of the paragraph describes Mr. Mlynarek allegedly making physical contact with police officers. Mr. Mlynarek, however, never pushed the Capitol Police, shoved his way past them or turned back and physical touched any officers. This issue was litigated at length during the trial and Mr. Mlynarek was acquitted of the charge of obstructing police during a civil disorder. It is particularly apparent that Mr. Mlynarek did not physically contact police officers when the videos at issue are played at a slow speed and Mr. Mlynarek can be seen with his hands often raised in a defensive posture, but never making physical contact with police officers.

4

Mr. Mlynarek also objects to the information in paragraph 17 being used to determine his guideline level because it represents acquitted conduct. The use of acquitted conduct is not explicitly barred by the Sentencing Guidelines. And Mr. Mlynarek acknowledges that the United States Supreme Court has declared that its use is permissible. *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, (1997). However, the Supreme Court has also allowed courts to vary from the guidelines range "based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007). Mr. Mlynarek asks the Court to vary based on a disagreement with the use of acquitted conduct, assuming the Court finds the facts necessary to apply a guideline enhancement based on any acquitted conduct.

One policy reason to not apply acquitted conduct to the guidelines determination is that the Sentencing Commission is currently considering an amendment to forbid acquitted conduct from being used in the guideline determination or, at a minimum, to limit its use. United States Sentencing Commission Proposed Amendments to the Sentencing Guidelines, p. 39. Mr. Mlynarek elected to go to trial on one count of his indictment. He was acquitted of obstructing police during a civil disorder, which necessarily required a finding that there was insufficient evidence beyond a reasonable doubt that he had engaged in the conduct contained in paragraph 17. It therefore can be considered acquitted conduct. Mr. Mlynarek is being sentenced on the cusp of a potential Sentencing Guidelines change that would apply to the most serious conduct with which he has been accused and acuitted. Mr. Mlynarek should not be denied this benefit merely because of the timing of when he was sentenced.

If the Court were to use acquitted conduct, even applying the standard of preponderance of the evidence, the information in paragraph 17 was not sufficiently proved. For that reason, he objects to the use of that information in determining his sentencing range. This would affect his guideline

level should the Court choose to apply § 2A2.4(b)(1). Mr. Mlynarek, therefore, objects to the application of that offense characteristic should it become relevant during sentencing.

Mr. Mlynarek also objects to the last sentence of PSR paragraph 18, because he and Mr. Balhorn had left the area before the crowd started shouting "Break it down!" The USPO's response to this objection states that Mr. Mlynarek already agreed to this allegation when he signed the statement of facts for his guilty plea. The statement of facts, however, gives a statement about the crowd shouting "break it down" but never states that Mr. Mlynarek was present when this occurred. He, therefore, did not agree that this allegation was true and maintains his objection.

If the correct guideline, § 2B2.3 is used, then Mr. Mlynarek anticipates that his final offense level would be four. A level of four and a CHC of I would be a guideline range of 0-6 months.

## II.     Mr. Mlynarek engaged in behavior that was aberrant and will not be repeated.

Mr. Mlynarek accepted responsibility for his behavior on January 6, 2021. There is no excuse for his conduct, nor does he offer one. In determining the proper punishment for Mr. Mlynarek, the Court should consider that he has minimal involvement in the criminal justice system before this point. He has a conviction for an Operating a Vehicle While Impaired ("OWI") offense but there is nothing in his record to suggest that he is normally a dangerous person or one who is prone to the type of actions that he committed in this case. His actions that day were an aberration of his normal behavior, and he has reckoned with the fact that he made a very poor decision to participate in such an awful episode in our country's history.

Mr. Mlynarek is a hard worker who has held down many difficult jobs and his prospects for continued employment seem very positive. PSR ¶¶ 81-83. He also has a family who he is very close with and who support him. PSR ¶ 66. His sister feels that his actions on January 6 were outside of his normal character and she described him as normally being "a great person to be

around." *Id.* Mr. Mlynarek's behavior on pretrial release is indicative that he will perform well and follow all the rules of probation. He has not had any violations of his pretrial release or given any indication that he is resistant to following Court orders.

Ultimately, the Court must impose a sentence that is sufficient but not greater than necessary. A sentence of incarceration in this case would be unnecessary. Mr. Mlynarek has given every indication that he will succeed on probation with his hard work ethic and the support of his family. He has given no indication that prison is necessary to instill a respect for the law in him because this behavior was not in his normal character. The most important fact of all is that he has recognized that his actions were wrong, which is the best indication that he has learned from this and will not repeat this conduct in the future.

### III.  Conclusion

For all the foregoing reasons, Mr. Mlynarek asks that the Court impose a sentence of probation in this case.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Darin Thompson*
DARIN THOMPSON
Assistant Federal Public Defender
Ohio Bar: 0067093
Office of the Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, OH 44113
(216) 522-4856   Fax:(216) 522-4321
E-mail: darin_thompson@fd.org
