**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES | |
| v. | CASE NO: 1:23-cr-00114-ACR-2 |
| Ronald Balhorn | |
| *Defendant* | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

The defendant, Ronald Balhorn, through counsel, hereby submits this memorandum for the purpose of aiding the sentencing process. The defendant respectfully requests the Court to consider a probationary sentence based on his mature age, years of living good life, and accountability for his misdemeanor actions on January 6, 2021.

**I.      PRELIMINARY STATEMENT**

Pursuant to the foregoing, it is the position of the defendant that the imposition of a jail sentence as the Government has requested would be inappropriate and unjust. Accordingly, the defendant respectfully requests that this Honorable Court exercise its discretion and impose a suspended jail sentence followed by 1-year probation.

**II.      STATUTORY, GUIDELINE AND HISTORICAL ANALYSIS**

1.  **Count 4 Convicted: Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1)**

    a.  Statutory Penalty: 1 year in jail /$100,000.00 dollar fine
    b.  Guidelines Calculation USSG §2B2.3 :  0-6 months:  Point Score 4
    There is no dispute between.  The defense agrees that the USSG point

score is 4**.**

2. **Count 5 Convicted: Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2)**

   a. Statutory Penalty: 1 year in jail /$100,000.00 dollar fine
   **b.**  Guidelines Calculation USSG §2A2.4 **:**  6-12 months:  Point Score 10

   The calculation for this offense is determined by USSG §2A2.4, with a base offense level of 10. The current dispute concerns the Government's assertion that a +3 increase is warranted under USSG §2A2.4(b)(1)(A), which mandates a three-level increase if the offense involved physical contact, specifically if (A) the offense involved physical contact.

   In light of the evidence presented, the ultimate determination of whether a plus 3 increase should be imposed as a result of the defendant's testimony on the stand rests with this Court. The Court has already found the defendant's testimony, in which he stated that the contact with the officers was inadvertent and amounted to nothing more than a mere "bumping into" of each other, to be credible. This finding is further substantiated by the fact that the Government failed to produce any witness to refute this account. It is reasonable to assume that the Government conducted a thorough search for any police officers who may have had contact with Mr. Balhorn and yet were unable to present any such evidence. The incident was captured on video, and it is undisputed that contact did occur. However, it is worth noting that the USSG specifically references physical contact as a necessary element for obstruction or impeding of officers. In this case, there is no evidence to suggest that any physical contact took place, as the Government has not provided any information regarding the officers'

intended destination. As such, it is impossible to conclude that the defendant

obstructed or impeded the officers through physical contact.

3.   **Count 7 Convicted:  Parading, Demonstrating, or Picketing in a
     Capitol Building 40 U.S.C. § 5104(2)(2)(G)**

   a. Statutory Penalty: 6 months and/or $5000.00 fine
   **b.**  Pursuant to USSG §1B1.9, the United States Sentencing Guidelines
   do not apply to any count of conviction classified as a Class B or C
   misdemeanor or an infraction. Therefore, the US Sentencing Guidelines
   do not apply to this count.

1.   **18 U.S.C. § 3553(a)(1)  Nature and circumstances of the
     offense and history and characteristics of the defendant**

   The Defendant traveled from Michigan to the District of Columbia, to

attend a speech by former President Trump on January 6, 2021, the defendant,

along with a companion, encountered two U.S. Capitol Police officers in the

Northwest Terrace area. The Defendant and the officers were involved in an

inadvertent collision. It was an unintentional encounter, as per the defendant's

sworn testimony. Subsequently, the defendant and their companion entered the

U.S. Capitol Building through the Senate Wing door at 2:22 p.m. and then

proceeded to the Statuary Hall Connector at 2:31 p.m. However, they only spent

a brief amount of time in the Capitol Rotunda before exiting through the south

door towards the Senate Wing at 2:47 p.m. After a total of 28 minutes, they left

the premises and returned to their home in Michigan. It is important to note that

the defendant was not there to cause harm or engage in any illegal activities, but

believed he was exercising his right to peacefully protest.  Upon further

consideration, the Defendant has acknowledged that it was improper for them to

have gained access to the Capitol building.

2. **18 U.S.C. § 3553(a)(2)(A)Seriousness of the offense, respect for the law, just punishment**

The Defense acknowledges and takes full cognizance of the grave and momentous nature of the incidents that transpired on the 6th of January, 2021. Notwithstanding this, the Court must also consider the Defendant's admission of guilt on the witness stand. The Defendant explicitly acknowledged his wrongdoing in entering the Capitol and would have readily pleaded guilty to the charges brought against him had the Government not insisted on his admission of carrying a weapon at the time of the incident. The Defendant vehemently denies that the walking stick he was in possession of could be considered a weapon, and thus, in order to defend his truth, was compelled to proceed to trial. It is worth noting that Mr. Balhorn is a rational individual with the ability to recognize his own shortcomings and admit when he is wrong. He has taken responsibility for his actions in entering the Capitol and has expressed no animosity towards any law enforcement officers, having inadvertently collided with two of them while advancing forward. Additionally, it should be noted that Mr. Balhorn, a 54-year-old man with a clean criminal record, possesses a deep reverence for the law, as evidenced by his admission of guilt.

3. **18 U.S.C. § 3553(a)(2)(B) Deterrence to criminal conduct and protection from further crimes**

Pursuant to the provisions of Section 3553(a)(2)(B) of the United States Code, the sentence must serve the purpose of deterring criminal conduct. In the

present case, it is noted that Mr. Balhorn has been under the supervision of the court for a period exceeding one year. Despite testing positive for marijuana, he has diligently complied with all imposed requirements. It is also worth mentioning that Mr. Balhorn is a responsible gun owner who has made a formal request, through his legal counsel, to retrieve his firearms following the conclusion of this trial. He has demonstrated a commendable respect for the legal process and has accepted the authority of the court and the law. It is evident that Mr. Balhorn is a law-abiding citizen who has no intention of engaging in any further criminal activity. It should be noted that while some individuals involved in the events of January 6, 2023, have received significant sentences, their conduct cannot be equated with that of Mr. Balhorn. Furthermore, it is pertinent to emphasize that the defendant has maintained a clean criminal record and has never previously been charged with any offense. It is important to acknowledge the significant stress and strain that this experience has caused Mr. Balhorn.

4.     **18 U.S.C. § 3553(a)(2)(C) to protect the public from further crimes of the defendant**

The actions carried out on January 6, 2021, are not taken lightly by the Defense, which acknowledges the Government's efforts in pursuing individuals responsible for destructive and harmful behaviors. However, it must be noted that this is not the case with the defendant, Mr. Balhorn. No measures need to be taken to protect the community from him, as it is evident that his actions were a one-time occurrence, and he has since learned his lesson. While he may have acted emotionally on that day, he did not cause any property damage or physical

harm. Although Mr. Balhorn did violate the law, it is not necessary to incarcerate him in order to safeguard the public. It can be assured that while under the supervision of this Court, Mr. Balhorn has shown respect and compliance.

5.    **18 U.S.C. § 3553(a)(2)(D) Need for treatment and training**

In the previous motion, the Government requested to revoke the defendant's conditions of release due to a positive test for marijuana. However, it is important to note that the defendant does not have a substance abuse issue and does not require any treatment. The defendant's counsel has thoroughly discussed this matter with him, and it has been determined that while he may have occasionally used marijuana in the past, he does not have a problem with the substance. Therefore, it would be unfair to label the defendant as someone with a substance issue, as he is not in need of any treatment.

6.    **18 U.S.C. § 3553(a)(3) Kinds of sentences available and the sentencing ranges established**

Pursuant to Section 3553(a)(3) of the United States Code, the Court must consider, in determining an appropriate sentence, the range of sentencing options available. In this case, the defendant is eligible for probation. Even if the Court considers USSG §2A2.4(b)(1)(A) (+3 point), he still falls within probation eligibility.   The Government charged Mr. Balhorn with serious felony offenses and submitted their Memorandum in Aid of Sentencing (ECF No. 63) as if he was convicted of those offenses.   The Government failed to address the findings of facts that this Court made after the trial.  Specifically, while all of the Defendant's statements weren't fully credited – the Court found that he did not intentionally assault officers in this case.

The Government asserts that the defendant, Mr. Balhorn, should be sentenced to a term of imprisonment due to his involvement in the events that took place on January 6, 2021. The Government presents several reasons to support this argument, including Mr. Balhorn's transportation of his co-defendant to Washington, D.C., his presence inside the Capitol building for a significant period of time, his engagement in a physical altercation with law enforcement, his lack of remorse, and his attempt to downplay his actions during his testimony.

The Defense contends that Mr. Balhorn's role in the events is no different from that of two family members attending an event together and should not be viewed as a mentor-mentee relationship. While the Defense acknowledges Mr. Balhorn's wrongdoing in entering the Capitol, he has shown remorse during his testimony. Additionally, the Defense argues that the Government's reliance on the preponderance of evidence standard, as set forth in United States v. Bell, 795 F.3d 88, 104–05 (D.C. Cir. 2015) (The determination of relevant conduct during sentencing may encompass acquitted conduct).    The Defense acknowledges that the reasonable doubt standard poses a significant barrier but asserts that the crux of the matter remains unaltered: either Mr. Balhorn's actions were of an assaultive nature, or they were not. This is not a scenario in which it is feasible to entertain the possibility that, under the preponderance standard, he may have committed acts of assault against the officers - such a supposition is untenable in the present case.

7.    **18 U.S.C. § 3553(a)(4) – The Guideline Range**

Pursuant to the findings of the U.S. Probation Office, the defendant's

criminal history has been classified as Category I, with a corresponding score of zero. Consequently, the defendant's adjusted offense level has been determined to be 13. However, the defense contends that the defendant's total offense level should instead be calculated at 10.

8.      **18 U.S.C. § 3553(a)(5) – Pertinent Policy Statements Issued by the Sentencing Commission**

The Defense is unaware of any such pertinent policy statements from the sentencing commission.

9.      **18 U.S.C. § 3553(a)(6) – The Guideline Range Need to avoid sentencing disparities**

The Defense acknowledges other persons who are charged with the exact same charges as Mr. Balhorn.   Many people have been charged for participating in the January 6, 2021, event[1].    The charges range from misdemeanors to more severe offenses.

**10.     18 U.S.C. § 3553(a)(7) – Restitution**

The Defense concurs with the Government's request for $500.00 in restitution, as this sum has been apportioned among all individuals found guilty in relation to the events of January 6, 2021. Such an approach appears equitable in distributing the collective financial obligation among the convicted parties.

**III.    TOTALITY OF THE FACTORS - CONCLUSION**

---

1 A regularly updated chart has been compiled to offer further details concerning the sentences issued to other individuals charged in connection with the Capitol breach. This chart can be accessed at https://www.justice.gov/usao-dc/capitol-breach

Mr. Balhorn's acquittal of the felony charges in his case was a major victory for him. He faced the daunting possibility of nearly 25 years in prison, which caused immense stress and fear of losing everything he had worked hard for over the past 30 years. Despite his mistakes, the Government was not willing to consider anything less than a felony plea, highlighting their strict enforcement of the law. However, it is important to recognize that not all participants in the January 6 incident were equal offenders. Unfortunately, the Government maintains that Mr. Balhorn should be held accountable for more than mere misdemeanor conduct, as it is their belief that he engaged in violent behavior. They are insistent upon imposing a significant period of incarceration. While they have agreed to probation to other offenders charged with misdemeanors, they are demanding incarceration for him based on their assumption that his behavior was violent and that his intentions exceeded mere misdemeanor conduct.  He is a law-abiding citizen who respects authority and believes in the rule of law. The initial mistake of entering the Capitol was not an intentional act to disrupt the election, but rather a lack of understanding of how Congress works. Mr. Balhorn's past record speaks for itself, with no indication of any prior violent behavior. It is clear that such behavior is not in line with his character.

The Court may find assurance in the fact that the defendant will comply with any probationary terms if granted the opportunity. It is acknowledged that, in the event of a probationary violation, appropriate consequences will be imposed. The defendant has already been subject to the Court's oversight for a period of one year, and an additional year of supervision, coupled with a restitution fee of $500.00 and 75 hours of community service, would effectively ensure both respect for the law and suitable retribution for the events of January 6, 2023.

Respectfully submitted,

ROLLINS AND CHAN

/s/

_____

Mark Rollins
DC Bar Number: 453638
Counsel for Ronald Balhorn

419 7TH Street, NW
Suite 405
Washington, DC 20004
Telephone No. 202-455-5610
Direct No: 202-455-5002
mark@rollinsandchan.com

**Date Filed:** February 10, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2024 this motion was electronically filed pursuant to the rules of the Court.

/s/

_____

Mark Rollins